THE STATE vs. THOMAS K. HARTLEY.

Second Judicial District, Norwich, May Term, 1901.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Where possession of personal property once attached has been lost by the attaching officer, the mere neglect or refusal of a drayman in whose possession the property was found, to turn it over to the officer upon the latter's assertion that it had been attached, does not make him guilty of resisting and obstructing such officer in the discharge of his duty, in the absence of evidence that the officer attempted to reattach the property; and a charge to the jury which permits them to draw an inference of guilt upon such ground is erroneous and misleading.

Argued May 29th—decided July 23d, 1901.

INFORMATION for resisting and obstructing an officer in

State v. Hartley.

the discharge of his duty, brought originally before a justice of the peace and thence by appeal to the Criminal Court of Common Pleas in New London County and tried to the jury before *Noyes, J.;* verdict and judgment of guilty, and appeal · by the defendant for alleged errors in the charge of the court. *Error and new trial granted.*

The case is sufficiently stated in the opinion.

*Seneca S. Thresher*, for the appellant (defendant).

*Hadlai A. Hull*, Prosecuting Attorney, for the appellee (the State).

TORRANCE, J. With reference to the first count of the complaint, it appears from the record that the State adduced substantially no evidence in proof of it, and that the court told the jury that their verdict upon it should be not guilty. The case was thus in fact tried and decided upon the second count.

In support of that count, the material facts which the State claimed to have proved, were in substance these: "On the 12th of November, 1900, by virtue of a writ of attachment against one Gevers, Draper, a deputy-sheriff, attached, as the property of Gevers, some household goods in the house occupied by Gevers. The goods were not removed from the house by the officer, but he having obtained from Gevers' wife the key to the front door of the house, gave it to the plaintiff in the writ of attachment as keeper of the attached goods. On the next day the officer took the key into his own possession. Early in the morning of the 14th of November, 1900, the accused, who was a truckman, came with his wagon, at the request of Gevers, to remove said furniture to the freight depot. He found it outside of the house, loaded it upon his wagon, and drove away with it towards the depot. When he had gone a short distance, the officer, still holding the writ of attachment, met him near the Preston Bridge, and attempted to stop the team and retake the goods in the following manner: "He informed the accused that the goods upon the

wagon were under attachment, and directed the accused to stop his team under penalty of arrest and to return the goods." The accused refused to stop his team and directed his assistant to drive on, and he did so. The officer then arrested the accused.

The evidence for the accused tended to prove that the officer did not attempt to retake or reattach the goods on the wagon, at the time he met the accused near the bridge, nor did he then say to the accused that he attached them; and that the accused did not obstruct, resist, or abuse the officer while in the execution of his office.

The reasons of appeal are eight in number, but it is unnecessary to consider any of them save the last. That one is based upon the failure of the court to answer properly the question asked by the foreman of the jury. After the court had charged the jury and they had retired to their room, they came back, and through their foreman, said: " We ask for instructions from the court as to whether the demand made by the sheriff at the time he met these goods near the bridge constituted another attachment or a renewal of his attachment? "

Prior to this the court, in its charge, had told the jury that unless they were satisfied " that the furniture was in the possession of the officer when it was taken away from the house on the 14th of November, then the accused in assisting in its removal, or in attempting to remove it was not guilty of obstructing the officer; " and that " merely having the key or keys of the Gevers' premises would not necessarily of itself constitute such possession." The court then said: " Now even if the attachment, as originally made, had been invalid for any reason, or even if the possession had terminated, yet the officer, with the writ of attachment in his hands, had a right to attach anew and to retain and take possession of these goods, and the defendant had no right to obstruct or resist him in the execution of his office in making attachment or taking possession of these goods when they were upon his wagon."

Upon the record it is quite apparent that two of the important questions for the jury to determine were these:

(1) Was the original attachment at an end when the accused took the goods from where they lay outside of the house? (2) Did the officer at the bridge make a new attachment of them? And it is equally apparent from the question of the foreman that the jury were laboring with the second question.

In answer to the foreman's question the court said: "If you are satisfied from the evidence that the sheriff attempted to take possession of these goods while upon the wagon, and that he was interfered with, obstructed, or resisted by the acts of the accused, then that would constitute a breach of the statute; but if the sheriff did not at that time attempt to take the goods into his possession, then the acts of the accused would not constitute a breach of the statute."

Under the circumstances we think this was not a sufficient answer to the question, and was liable to mislead the jury in an important point in the case. The facts in evidence tended to show that the officer claimed the goods as his under the original attachment, and not under an attachment which he had then made or had attempted to make. What he said to the accused was that the goods were already under attachment, and that for that reason the accused must return them to him under penalty of arrest; and he said nothing about attaching them anew. From the foreman's question, it is evident that the jury wanted to know, in case they found the original attachment was at an end, whether what the officer said and did near the bridge, about which there seems to have been little or no dispute, "constituted another attachment or a renewal of the first attachment." If the facts as they appear of record as to what the officer said and did near the bridge were substantially undisputed at the trial, the court should have told the jury that they did not constitute another attachment, nor a renewal of the first attachment; and if these facts were in dispute, then the court should have instructed the jury as to what acts would constitute a new attachment. If the jury found, as upon the evidence they well might, that the first attachment was at an end, and that no second attachment was made, then, un-

der the answer given to the foreman, if they also found that
the officer " attempted to take possession " of the goods while
on the wagon, and the accused obstructed him in so doing,
their verdict should be guilty. This was clearly wrong, and
the court undoubtedly did not intend to so charge ; for if
the first attachment was at an end, and no other was made,
the accused was justified in doing what he did.

There is error and a new trial is granted.

In this opinion the other judges concurred.